### THE MAYOR *v.* COOPER.

1. Where a court has no jurisdiction of a case, it cannot award costs, or order execution for them to issue.
2. Where a party removes under a statute of the United States from a State court to the Circuit Court of the United States a case depending in point of merits on the right construction of such statute, the Circuit Court cannot dismiss and remand the case, upon motion, on the ground that it has no jurisdiction, because the statute is unconstitutional and void.
3. The validity of the defence which such statute may authorize to be made is a distinct subject, and to be passed on by the court when in due form before it.

ERROR to the Circuit Court for the Middle District of Tennessee; the case being thus:

The Constitution of the United States ordains, that "the judicial power of the United States shall be vested in one Supreme Court, *and in such inferior courts as Congress may from time to time ordain and establish,*" and that this power "shall extend to *all cases,* in law and equity, arising under this Constitution and *the laws of the United States.*"

With this provision in force as fundamental, Congress, having in 1789 established Circuit Courts, inferior to the Supreme Court, passed, during the late rebellion, to wit, March 3d, 1863, "An act in relation to *habeas corpus* and regulating judicial proceedings in certain cases," and on the 11th May, 1866, another amendatory of it.

The statutes provided, in respect to all acts done or omitted to be done, " under any law of Congress," or " by virtue of any order, written or verbal, general or special, issued by the President or Secretary of War, or any military officer of the United States holding command" of the place where such act or omission occurred, that such authority should be a defence in all courts for all concerned, to any civil action or criminal prosecution therefor.

And provided further for the removal, in a manner prescribed, of all such cases, before or after final judgment, from the State courts to the Circuit Courts of the United States.

In this state of law, constitutional and statutory, Cooper sued the mayor and aldermen of Nashville, and with them one Smith, in the Circuit Court of Davidson County, in that State; his declaration alleging trespasses upon real estate, and the asportation and conversion of chattels. The mayor and aldermen pleaded the general issue.

Both parties defendant presented petitions verified by affidavit to the court in which the suit was pending, praying for a removal, under the statutes of 1863 and 1866 just named, of the causes to the Circuit Court of the United States for that district.

The petition of Smith set forth that the trespasses complained of, if committed, were committed during the rebellion by authority of the President of the United States, under an order issued by General G. H. Thomas, an officer of the United States, holding command of the district within which the trespasses are alleged to have occurred, which order was approved by Andrew Johnson, then an officer of the United States, and the military governor of the State of Tennessee.

That of the mayor and aldermen alleged, that at the time of the commission of the alleged trespasses their co-defendant Smith was the acting mayor of Nashville, and that he and the persons acting with him as aldermen and councilmen held their positions as mayor, aldermen, and councilmen as the appointees and agents of the government of the United States, appointed under the authority of the President of the United States, by the then military governor of Tennessee, to serve the lawful military purposes of the said President of the United States, as the commander-in-chief of the forces thereof, in suppression of the rebellion, and that all the acts complained of, if done, were done under the authority and for the benefit of the United States and the army thereof; and that the said acting mayor and aldermen, at the time when the trespasses are alleged to have been committed, had received military orders from the said military governor, under the authority of the Secretary of War of the United States, and also orders from the military officers of the United

States having command of the district, to do all the things which were done, or are alleged to have been done by the defendants.

The cause was removed to the Circuit Court of the United States according to the prayer of the defendants.

A *motion* was made there to dismiss the suit *upon the ground that the court had no jurisdiction of the cause.* No allegation, apparently, was made against the regularity in point of form of the proceedings by which the case had been removed from the State court, or that the case was not within the acts of Congress of 1863 and 1866. The motion to dismiss was sustained by the court. The court held that the defence had "*failed to show that they are entitled* to have this cause removed from the Circuit Court of Davidson County, Tennessee, to this court for hearing under the provisions of the act of Congress of March 3d, 1863, and the act amendatory thereof, passed May 11th, 1866, *and that the said acts of Congress,* so far as they authorize and provide for the removal of causes from the State to the Federal courts in cases where the petitioner shall show that the acts complained of were done under the order of the President or Secretary of War, or of a military commander, or otherwise than under an act of Congress, *are unconstitutional and void.*" It was accordingly ordered and adjudged " that said cause be *dismissed and remanded* to the Circuit Court of Davidson County, *and that the defendants . . . pay all the costs incurred in this court, for which execution may issue.*"

This writ of error was prosecuted to reverse that judgment.

*Mr. R. L. Caruthers, by brief, for the plaintiff in error,* contended that the matter having arisen on motion to dismiss, presented a question of jurisdiction purely; that at such a stage of the case, no question could be raised as to the validity of the defence which the statutes authorized to be set up; that even if the defence authorized was invalid and unconstitutional, still that under the provisions of the Constitution which extended the jurisdiction of the Circuit Court—an " inferior court," undoubtedly ordained and established by

Congress—to *all* cases in law and equity, arising under the *laws of the United States*, that court was bound to entertain and in some way adjudge it; that the case should therefore be remanded.

*No opposing counsel appeared;* nor was any copy of the opinion of the court below contained in the record.

Mr. Justice SWAYNE delivered the opinion of the court.

It does not appear that any question was raised in the court below as to the regularity of the proceedings by which the case was removed from the Circuit Court of the State to the Circuit Court of the United States. Nor does it appear to have been denied that the acts of Congress referred to embraced the case, and if valid, gave the right to have the transfer made. We are therefore relieved from the necessity of considering those subjects. We have found nothing in the record, and nothing in the statutes which, as we think, authorizes a doubt or objection as to either point.

The judgment of the court proceeded entirely upon the ground of the constitutional invalidity of the provisions in the acts referred to, which relate to the subject.

We have not had an opportunity to see the opinion of the court, and no argument has been submitted to us in behalf of the defendant in error. We are therefore at a loss to imagine what train of reasoning conducted the learned judge to the conclusion announced in the order, and hence are constrained to examine the subject without reference to the particular views which controlled the decision.

Before adverting to the constitutional question, there is another feature of the order which calls for remark. The court held that it had no jurisdiction whatever of the case, and yet gave a judgment for the costs of the motion, and ordered that an execution should issue to collect them. This was clearly erroneous. If there were no jurisdiction, there was no power to do anything but to strike the case from the docket. In that view of the subject the matter was as much *coram non judice* as anything else could be, and the award of

costs and execution was consequently void. Such was the necessary result of the conclusions of the court.

This court has the power to declare an act of Congress to be repugnant to the Constitution, and therefore invalid. But the duty is one of great delicacy, and only to be performed where the repugnancy is clear, and the conflict irreconcilable. Every doubt is to be resolved in favor of the constitutionality of the law.

The question before us relates to the 4th and 5th sections of the statute of 1863, and the 1st, 3d, 4th, and 5th sections of the statute of 1866.

They provide, in respect to the acts specified, and all acts done or omitted to be done, " under any law of Congress," or " by virtue of any order, written or verbal, general or special, issued by the President or Secretary of War, or any military officer of the United States holding command" of the place where such act or omission occurred, that such authority shall be a defence in all courts for all concerned, to any civil action or criminal prosecution for the acts or omissions complained of.

They provide further for the removal, in the manner prescribed, of all such cases, before or after final judgment, from the State courts to the Circuit Courts of the United States.

The Constitution provides, that " the judicial power of the United States shall be vested in one Supreme Court, and in such inferior courts as Congress may from time to time ordain and establish," and that this power " shall extend to all cases, in law and equity, arising under this Constitution and the laws of the United States." The other particulars of the grant of power it is not necessary in this case to consider.

The power here under consideration is given in general terms. No limitation is imposed. The broadest language is used. " All cases" so arising are embraced. None are excluded. How jurisdiction shall be acquired by the inferior courts, whether it shall be original or appellate, or original in part and appellate in part, and the manner of procedure

in its exercise after it has been acquired, are not prescribed. The Constitution is silent upon those subjects. They are remitted without check or limitation to the wisdom of the legislature.

The sixth article declares that " the Constitution and the laws of the United States, *which shall be made in pursuance thereof*," . . . ." shall be the supreme law of the land." The grant of the judicial power contains no such qualification. It is declared to extend " to all cases arising under the Constitution *and laws of the United States*," without distinction or discrimination as to the latter; nor is there any restriction as to the tribunals—State or Federal—in which they may arise. Wherever found, they are within the reach of this authority, and subject, for its exercise, to the law-making power of the nation.

As regards all courts of the United States inferior to this tribunal, two things are necessary to create jurisdiction, whether original or appellate. The Constitution must have given to the court the capacity to take it, and an act of Congress must have supplied it. Their concurrence is necessary to vest it. It is the duty of Congress to act for that purpose up to the limits of the granted power. They may fall short of it, but cannot exceed it. To the extent that such action is not taken, the power lies dormant. It can be brought into activity in no other way. Jurisdiction, original or appellate, alike comprehensive in either case, may be given. The constitutional boundary line of both is the same. Every variety and form of appellate jurisdiction within the sphere of the power, extending as well to the courts of the States as to those of the nation, is permitted. There is no distinction in this respect between civil and criminal causes. Both are within its scope. Nor is it any objection that questions are involved which are not all of a Federal character. If one of the latter exist, if there be a single such ingredient in the mass, it is sufficient. That element is decisive upon the subject of jurisdiction. " A case in law or equity consists of the right of the one party as well as the other, and may be truly said to arise under the Constitution or a law of the

United States whenever its correct decision depends upon the right construction of either."

The rule applies with equal force where the plaintiff claims a right, and where the defendant claims protection, by virtue of one or the other.*

It is the right and the duty of the national government to have its Constitution and laws interpreted and applied by its own judicial tribunals. In cases arising under them, properly brought before it, this court is the final arbiter. The decisions of the courts of the United States within their sphere of action, are as conclusive as the laws of Congress made in pursuance of the Constitution. This is essential to the peace of the nation, and to the vigor and efficiency of the government. A different principle would lead to the most mischievous consequences. The courts of the several States might determine the same questions in different ways. There would be no uniformity of decisions. For every act of an officer, civil or military, of the United States, including alike the highest and the lowest, done under their authority, he would be liable to harassing litigation in the State courts. However regular his conduct, neither the Constitution nor laws of the United States could avail him, if the views of those tribunals and of the juries which sit in them, should be adverse. The authority which he had served and obeyed would be impotent to protect him. Such a government would be one of pitiable weakness, and would wholly fail to meet the ends which the framers of the Constitution had in view. They designed to make a government not only independent and self-sustained, but supreme in every function within the scope of its authority. The judgments of this court have uniformly held that it is so.†

The jurisdiction here in question involves the same principle, and rests upon the same foundation with that conferred by the twenty-fifth section of the Judiciary Act of 1789.

---

* Martin v. Hunter's Lessee. 1 Wheaton, 314; Cohens v. Virginia, 6 Id. 264; Osborn v. The Bank of the United States, 9 Id. 821.

† United States v. Peters, 5 Cranch, 115; Ableman v. Booth et al., 21 Howard, 506; Freeman v. Howe, 24 Id. 450.

The constitutionality of that provision has been uniformly sustained by the unanimous judgment of this court whenever the subject has been presented for adjudication. The twelfth section of the act of 1789; and the third section of the act of the 2d March, 1833, relating to revenue officers, present the same question. We are not aware that a doubt as to the validity of either has ever been expressed by any Federal court. The acquiescence is now universal.

The fourth and fifth sections of the act of 1863, are copied largely from the eighth section of the act of February 4th, 1815.* That act expired by its own limitation at the close of the then existing war. The section referred to, was continued in force for one year in the sixth section of the act of March 3d, 1815.† See also the third section of the act of March 3d, 1817.‡

We entertain no doubt of the constitutionality of the jurisdiction given by the acts under which this case has arisen.

The validity of the defence authorized to be made is a distinct subject. It involves wholly different inquiries. We have not had occasion to consider it. It has no connection whatever with the question of jurisdiction.

The order of the court below is REVERSED. An order will be remitted that the cause be REINSTATED, and that the court proceed in it according to law.

---

* 8 Stat. at Large, 198.      † Id. 233.      ‡ Id. 396.